May it please the Court, Robert Carey for the appellants, Mesquite Grove and Debbie Fazio. First, to make it clear, the appellants have no claim against the Appalachia-Pima County Board of Adjustment. It's a little confusing how they came to file briefs in this case. But the fact is that in the state court, it was a state court action initially. The court below in the district court correctly found that when the appellants named the Board of Adjustment as the defendant, it did so improperly because, under Arizona law, the Board of Adjustment is a non-jural entity. You would have had to sue Pima County basically doing business as the defendant. Right. The real defendant here is Pima County. Correct. Right. Nobody seems to, even though it's got the board, it's really the Pima County is the defendant. We understand that. The plaintiff didn't name him, so we're out on that claim. So there's no claim against the Board of Adjustment by the appellants. But I do need to respond to some of the things that were stated in the board's brief because I think that they're prejudicial. Some of the facts, it states that the appellants failed to appeal the decision of the Board of Adjustment, and that's not true. The Third Amendment complaint was an appeal of the Board of Adjustment's ruling to the superior court. Well, wait. I thought the only issue in front of us was whether or not the district court properly granted, I forget, I can't remember if it was a summary judgment on the Ralupa claim. Well, yes. That's the only thing you're appealing, correct? Yes, Your Honor. I just didn't like the Board of Adjustment's brief, so I wanted to cover something. Let's concentrate on why the district court made a mistake. Okay. You want to convince us that we should reverse what the district court did in granting summary judgment. That's all I really, for the moment, that's what I want you to tell me. Where did the district court go wrong? I read your brief. Okay. You know, it's a close question. It's a hard question. Okay. And I would like to say that it's not only the Ralupa claim. The First Amendment freedom of religion claim and the Ralupa claim are twinned. I mean, if it's different. They're not twinned. They're different. Ralupa has a different standard, and the First Constitutional claim has a different analysis. And you didn't, in your brief, you did not analyze a First Amendment religion claim. Okay. I see this as a Ralupa case. So you argue that the zoning decision was a substantial burden on your client's religious freedom? Correct. Okay. And the district court rejected that argument? Yes. Okay. So where did the district court go wrong? Well, should I adjust the immunity claim? Because there was basically a cross-appeal on the immunity claim by the. No, why don't we address the very important claim that is in front of us, the really important claim. Okay. I apologize. Okay. I just don't want to read the opinion and hear something like counsel conceded. We're not saying you conceded anything. We want you to tell. The heart of your case is Ralupa. I agree, Your Honor, but I don't. Why did the why was the county's zoning decision here a substantial, whatever the test is, substantial interference with their religious practice? Substantial burden, I think, is the language from the statute. And the court below did not directly address whether the inspector was entitled to summary judgment on his interpretation of the Pima County Zoning Code. That interpretation was that Pima County Zoning Code defines church as this. I, as the zoning inspector, interpret the zoning, the code. I've reviewed the facts. And I've determined that this applicant is not a church under the Pima County Code. You didn't say it wasn't a church. You said the code said primarily, you know, engaged primarily in a practice of religion, I guess it was. And the inspector said, well, if you look at everything they're doing, the weddings and the facility for caring for the children, for the handicapped children, they're doing 75 weddings during the year. I forget if it's 75 or 70, whatever the number was. They're really not, they're really not, don't meet the test for the, under the code. Right. As a church. Correct. Don't meet the test. Correct. So why, you're not, you don't get an, under ALUPA, you don't get an automatic exemption from complying with the zoning codes. No, but the point is right. So what was wrong with what they did? Okay. Well, you, and what you have to show, and this is what the district court said, was that you didn't show any evidence that the regulation deprived the church of a suitable site. The only testimony was that there were mesquite trees at this particular location, but the district court said that mesquite trees are ubiquitous in Pima County. So what was your evidence that this regulation deprived your client of a suitable site for the church, assuming, for the purposes of this question, that it is a church? Assuming that it is a church, because that's what the district court, that's what the district court did. The district court basically affirmed the inspector on an alternative basis in the record, as we've, as the ability. What was the evidence that makes the district court's decision wrong? I mean, how did this code deprive the church of a suitable site? Your Honor, the district court was incorrect, not as a matter of evidence, but as a matter of law. The interpretation of the Ninth Circuit decisions that it sets out in both its June orders of 2013 both said, in effect, that the Ninth Circuit has a per se rule that if you're a church and if you want to use a piece of property and if the county says, if the governing body says you can't do it, then you have to prove that you couldn't find some other place in the jurisdiction to have your church. And that is not the law in the Ninth Circuit. The law in the Ninth Circuit, each of the cases that the district court in each site has cited, and they would be the Foursquare Gospel case, the San Jose Christian case, the Guru Nanak case, and the Centro Familiar case, all of those cases started from a premise of a church wanting to use a piece of property for church use, which it was not zoned for. So they go to the governing body and they say, we know this is not zoned for a church, but let us put a church here, and the governing body says, well, no, we have a reason for not wanting to do this, let you have a church here. That is not the case in this situation. The case in this situation is, is that the zoning code is zoned for a church, and we want to use the property for a church purpose. Now they still had to get permits, correct? Building permits. Building permits. Right. And that's what they were not able to get. Right. They were not able to get it because the building inspector conducted this telephone poll of, of, this telephone poll of churches around town, and, you know, this, if this had ever been in a trial, none of that evidence ever would have gotten in under Daubert. I mean, the, it was very unscientific. But we, you know, this idea that, well, I called a bunch of churches in Tucson, not saying which ones they were. They averaged 15 weddings apiece. Well, she also looked at the website that your clients were involved in, indicating that they were going to do weddings at this particular location, and also in their representations to the inspector, to the zoning inspector, that they represented they were going to be doing about 70, what was it, 70 weddings? 70. Correct. 70 weddings during the year. Right. And along with the other activity, and the inspector had concerns, but there's no evidence that, that there was any proposal by your clients to maybe reduce the number of weddings. Well, Your Honor. Or downsize the other facility. There's nothing like that in there. There's no attempt to, on their part, to sort of mitigate the concerns that the county had. Exactly, Your Honor. I think that's a very good point. And the county has submitted supplemental authority recently, which Walker v. Baird, which they, in which the government action, it was the warden of a prison. His action was upheld because it was narrowly tailored to serve the compelling State interest. In this case, there was no effort to narrowly serve. Instead of saying, okay, we'll consider your, we'll give you a building permit, but you can only have 15 weddings in there a year, which is the average of Tucson, we know that, and you can go ahead and you can have all your other services, which are church services, baptisms, teaching, youth groups, Bible studies, all the other things that this church wanted to do there. Instead of saying, we understand your church, you can do all this stuff, but the public interest is in not having so many weddings, so many public events in this residential neighborhood, so we'll approve your development plan, but it's limited to 15 weddings a year, which is our belief that that's a reasonable number. There's no evidence in the record that the county did that. Is that the county's, I understand what you're saying, it's kind of like a conditional use permit. You get the permit, but you have conditions attached to it. But is there any obligation in the county to proceed in that manner? I think so, Your Honor. Clearly, the statute itself has language in it. The statute itself says that there must be a compelling government interest and it must be narrowly tailored to serve that interest. And here, they just threw the baby out with the baby bottle. No, how about in the zoning code? How about in the zoning ordinance? When the zoning inspector denied the permit, was she obligated also to say, well, I'll grant you a permit, or you might be, you might want to do this, this, and this, and then we'll, you know, take another look. Is there anything in the zoning ordinance that required the inspector to do that? Yes, there is, Your Honor. And there's evidence in this case that in describing her duties, the zoning inspector talked in terms of consulting and making suggestions on development plans. And actually, the development plan in this case was approved. The part of the development plan which related to screening, where the parking is going to be and that stuff, they had gone that far. And then the neighbors started complaining, and then the zoning inspector says, oh, wait a minute. This is not a church, because you're going to have too many weddings. And that's when it was denied. So let me ask you, what's the relief that you're seeing? As I understand it from the papers, the briefs, the property, they lost the property through foreclosure. Is that correct? Yes, Your Honor. So what's the claim here now? Well, we don't have the claim, any claim for injunctive relief, any claim for an order to grant the permit because it's mooted under State law. That's pretty clear. So is it damages? But we do have damages. Can you get damages under RLUIPA? Oh, yeah. You can? Yes, absolutely. Can you get damages against an individual? The inspector's name is a defendant here. I believe so, Your Honor. It's any person, I think. I thought RLUIPA was the government, refers to the government. You know, in my paper, sir, I don't have the exact language of this statute. Well, it says, No government shall impose or implement a land-use regulation in a manner that imposes substantial burden on a religious exercise of a person. But the Pima County, the government entity which the building inspector operates under, is named as a defendant. And there were substantial damages because the appellants invested substantial amounts of money to develop this property, to engineer it, take it through the development process, and then they lost it through a foreclosure because they were held up for so long. You have State claims, too? What happened to the State claims? The State claims were dismissed. We did not appeal that. Those State claims were interference with contractual relationship, interference with business expectancy and inverse condemnation. We did not appeal that portion of the district court's ruling denying those claims. May I reserve my minute? Oh, excuse me, Your Honor. Maybe you could try to cover it, but tell me simply why you could not have found another location. Well, Your Honor, they had already bought this location. I understand. I mean, it's not like they're the government where they have an infinite amount of money. I mean, these are people who were trying to establish a ministry. They took all their money that they had available. They put it in this property. And now the building inspect, they go through the process. The development plan is they go through, you know, do this, do that, screening, parking. They get to a point where the government just drops the hammer on them. And at this point, I mean, it's just in theory, in theory maybe they could have. But as a practical matter, pick up and find another few hundred thousand dollars to run out and buy another property while they're trying to sell this one? It's not practical. And it's not necessary because there's this kind of interference with religious freedom has been the subject of some of the most voracious scolding by the U.S. Supreme Court, and rightly so. All right. Thank you, counsel. Good morning, and may it please the Court. My name is Andy Flagg. I'm a deputy Pima County attorney. I'm here on behalf of Apolli Carmine DeBonis, Jr., Pima County's chief zoning inspector. This is, all that remains of this case right now in terms of what the claims are, is a RLUPA damages claim. And as I guess Mr. Cary has conceded today, that's now only against my client, the chief zoning inspector. I think Mr. Cary's wrong. Pima County has never been a party to this case itself, although this case has been treated throughout as basically an official capacity claim against the chief zoning inspector, which is effectively a claim against the government entity itself. Right. I mean, that could be easily corrected. Yeah. That's a minor issue that doesn't really have anything to do here with it. But I think it is important that Mesquite Grove is only challenging what the chief zoning inspector did. It's solely a RLUPA claim. It's solely a RLUPA claim, but it's based on a procedure. Her decision that was made to the board, that the board affirmed, did that, you know, was that a substantial burden on their religious exercise? Correct, Your Honor. I do think it's important to look at what the decision was that was made, because there was some talk here about conditions and narrow tailoring and that sort of thing. The way Pima County's zoning code works, and it works a little differently than some of the other published opinions, is if you are a church, if you fall under that definition in the code, you get to locate in a residential zone. There's no conditional use, no conditions can't be imposed on that. So the question that was presented to the chief zoning inspector and later to the board of adjustment was whether they fall under the category of church, in which case there's no limiting the number of weddings, if in fact they qualify as a church, no other conditions that can be imposed on that decision. They just get a permit. Or whether they're an event venue, in which case that's not a permitted use in that zone and you have to go to a zone that does allow it. And there are zoning classifications in Pima County that allow an event venue. That's undisputed. Including at least one classification that allows it as of right as well. Right, but the district court, the odd thing to me was that that's how the zoning ordinance works. And unlike in some of our other cases, Mesquite Grove wasn't asking for a rezoning decision. It was asking to be allowed to be there as a church. The county makes the decision it's not a church, but the district court assumes it's a church and then applies the law from our zoning code decisions, saying, well, there's no showing that there's another suitable location. But really isn't the real thrust heart of this case is whether or not it was a church within the meaning of the Arizona statute? First of all, I guess I read the district court's decision a little differently. I think she assumed that this use constituted religious exercise for purposes of relupa, which is broader than what Pima County defines as a church. So, in other words, I don't think she assumed, and Mesquite Grove makes this argument, but I think it's incorrect. I don't think she assumed that the property qualified as a church under the zoning code. But it did for purposes of relupa. As religious exercise, which, again, is broader than a church. So, for example, under Pima County's code, a church does not include parochial schools. Clearly, though, that's religious exercise under relupa. So I think there's a bit of a conflation of those two issues on the part of the appellants in this case. They are distinct issues. But that is the heart of Mesquite Grove's argument. We have contended, and it's argued in the brief, I don't intend to embellish on it too much here, but that that issue is precluded by the mootness of the land use appeal. In other words, if you think a local zoning decision is incorrect, an interpretation decision, you have a remedy by appeal under state and local law. Mesquite Grove exercised that remedy by going to the Board of Adjustment District 4. The board decided unanimously in favor of the chief zoning inspector. That went to superior court and it became moot. At that point, that issue, whether they're a church or not. What do you mean it became moot? When the property was sold to foreclosure. Mesquite Grove conceded a summary judgment argument that. Well, they're seeking damages under relupa. So it didn't moot the relupa claim, but it mooted the land use appeal. All right. And as a result of the mootness of the land use appeal, that issue can't be re-litigated in the guise of a relupa claim. But even assuming that it can, Mesquite Grove's position, and I think they've clarified that before the Court today, is simply that so long as the decision was wrong, that alone is a relupa substantial burden violation. And we would submit that the courts, the cases in this circuit and in other circuits that analyze relupa claims, it's a multi-factor analysis to determine whether something's a substantial burden. It has to be based on the individual facts of the case. And it gets into other factors, including, most importantly I think in this case, the availability of alternate sites. So there was no evidence presented other than the general argument that a party always incurs delay in expense in trying to find another parcel. Why isn't there a factual dispute here? There's no factual dispute here because. Because if, in terms of alternate sites, it's clear that there are not only other alternate sites, but other entire. Well, they just got it through saying that they invested all this money and they were into this pretty deeply and had gone far along. And under those circumstances, it wouldn't be reasonable to expect them to find another location. That's the position that they take. Why doesn't that create a factual dispute? There is no published relupa decision that I'm aware of in which a court says that alone, the fact that you've picked a parcel and now you're denied the use of that parcel for whatever reason, that that alone constitutes a relupa substantial burden. Well, supposing there's no precedent, why isn't it a good argument anyway? They've gone to all this expense and trouble. Why isn't it a good argument? Because, first of all, this was a close question before the chief zoning inspector. There was evidence, as I think the panel has noted, there was evidence on either side in terms of whether it was a church or not. And so the correctness of a decision on a local land use question should not be easily converted into a relupa substantial burden claim. And I think that's why courts look at other factors, including not just alternate sites, but the character of the government's decision. Was it supported by evidence and in good faith, or was it arbitrary and capricious and in bad faith? And in particular, the Second Circuit cases and the Seventh Circuit cases talk about the purpose of that analysis being to root out hidden discrimination against religious exercise. So you look for the arbitrariness of a decision, the good or bad faith on behalf of the government entity, in evaluating that question. So what you're saying is that her efforts or her work in looking at the wedding situation and evaluating the response of Mesquite when they laid out how they were going to use the facility, that as a matter of law, those circumstances result in a determination that there was no relupa violation. On these facts. On these facts as a matter of law. But they seem to be in dispute. The facts are in dispute with respect to, I suppose, whether it ultimately would qualify as a church. Yeah. But that question is a decision of local land use law which is appealable and can be corrected. A minute ago you said that that decision, because they didn't – because they sold the property, that decision became moot. And therefore, there's no way you can second – there's no way you can question that decision, that determination. It's a matter of issue preclusion, basically, yes. Where does – how does mootness relate to issue preclusion? Because under Arizona law, when you're in the administrative appeal process and you appeal to an administrative entity, in this case the Board of Adjustment District 4, and that decision becomes final either through – well, in the case we've cited. It's not final, though, if it's moot. It just means that there's no decision. It's – there's nothing. Well, it becomes final in the sense that summary judgment was granted in favor of the defendants on the ground of mootness. Now, it's not on the grounds of actually litigating the issues, but those issues were fully – Who granted summary judgment and where? Judge Rattou, the district court in this case. In this case? In this case. On that particular issue? Yes. The chief zoning inspector moved for summary judgment on the land use appeal in addition to the other counts because, as Mr. Carey pointed out, that was still part of the case and that motion was granted. And that was not appealed? And that was not appealed, Your Honor, and I don't think it could be at this point because it's moot. I would like to really quickly get to the issue of the survey. I guess I'm going to have to think through that a little bit. Yeah, because it doesn't – the point you made earlier that it almost seems irrelevant to me what the Arizona Code says, how it defines a church and the basis for its decision, because this exercise may very well be protected under RLUIPA. I agree that this exercise, if it's sincere, and there's a question of fact about that, but if it's sincere, this may well be protected under RLUIPA. And it may well be a substantial burden. As it turns out, it may very well have been a substantial burden to not let them operate in a place where it was zoned for them to operate, which resulted in ultimately foreclosure and loss of the site entirely. Your Honor, the Court can only get to the question of whether it was zoned to operate in this – whether this property was zoned for Mesquite Grove to operate if it reverses the decision of the Board of Adjustment that it was not a church. But you yourself have argued that RLUIPA covers a broader range of religious exercise, and – right? You've argued that today. Correct. And so although the Mesquite Grove church might not be a church as defined by Arizona zoning law, it could be religious exercise under RLUIPA. And the question remains whether it was substantially burdened by this particular ordinance, which narrowly defines church in a way that precluded them from using their site. Correct. Narrowly defines church, but allows this type of use in other zoning districts. The same goes for parochial schools. Our code does not classify parochial schools as churches. They're allowed in other locations. So the point is that the question of whether they're a church as defined in the code is a question of local land use law. The question of religious exercise and substantial burden, religious exercise is broader. But to show substantial burden, they can't just show we weren't allowed to locate on this parcel. They have to show that we were substantially burdened in our ability to locate at a suitable site in Pima County. And they've made no effort to show that in this case. I'd like to see – Well, I don't know why their own particular factual circumstances about investing money in that doesn't also factor into that analysis. Well, I suppose it would, although – I mean, because the county, they got certain – apparently they got certain – some approvals, correct? No, that's not really correct. They submitted a development plan. Development plan is a sheet of paper with, you know, a picture of what you're going to do and other information on it. It said we're going to be a church. That went through one level of zoning review. They got back a card that said this has been reviewed for zoning matters, and here are the things we need you to address. It's true that there was nothing in there about we don't think you're a church. But it was never approved. And it was while it was still in the review process that this question came up. I'd like to see the remainder of my time to Mr. Baldwin, if I can. All right. Thank you. Thank you. If it pleases the Court, my name is Howard Baldwin. I represent the Board of Adjustment, who apparently is out of this case now, according to the appellant. We wish they had said that earlier. But let me just touch on a couple of things. The one thing, the use that was proposed, the other use was an adult daycare, Judge Payas. But you hit the heart of this case. This is about the Verlupka Act, and it's also about what the decision was below. Judge Rattow said let's put all this other stuff aside and let's look at this as if it is a church. But if it is a church, then let's apply the precedent of the Ninth Circuit, which is in order to meet the burden of the proof under the Act itself, you must show some lack of ability to get another location. And that has been true of all the cases that have been decided by this circuit so far where the substantial burden question comes up. And it's not entirely clear that our case law says it's an absolute requirement in every case. No, it, and I agree with you. I think you may have overstated the extent of our holdings. I agree with you. But I think it is a factor that's an important factor. I agree with you, Judge Payas.  Absolutely. And in this particular case, mitigation could have been performed here by the appellants themselves, just lower the scope of what they were wanting to do so that their use was not primarily something other than what was defined in the zoning code. So that was within their ability to do, but they just couldn't. Was it their obligation under the zoning ordinance to come up, once it was denied, was it their obligation to come up with something less grand, you know, something smaller? Well, I don't look at it as obligation. I look at it as common sense. I don't think it was the obligation of the zoning inspector either, but common sense tells you that if that use isn't going to work because it so far exceeds the definition of what a church is, then come up with something else. But, you know, I think that lies on both sides. I think the zoning inspector can say, well, if you did this and this, you know, you'd comply. Then we could give you your zoning permit. Is there any obligation under the zoning ordinance for the inspector, you know, to sort of be, you know, help the applicant, get through the process and tell them this is what you need to do? Well, they certainly do that most of the time, but, you know, at some point. Your friendly neighbor, you know, your friendly government entity trying to help things along. That's true. You know, in Arizona what they have is for the Board of Adjustments that they can interpret. The zoning inspector can interpret the code. And what they get into then is an adversarial position sometimes when they interpret it one way and the applicant interprets it the other way. Okay. I see that my time is up. Thank you very much. Thank you very much, Counsel. Mesquite Grove versus Pima County is submitted. And we'll take up Arizona Students Association versus Arizona Board of Regents.
judges: Noonan, Wardlaw, Paez